W. T. SMITH *et al. v.* HENRY ZWICKER.

(*Knoxville.* September Term, 1916.)

1. **RAILROADS. Right of way. Extent.**

In a suit of unlawful detainer in which defendant claims to have gone into possession of land lying beside a railroad's tracks under one who had received possession from the railroad, a charge that the railroad company was entitled to 100 feet on each side, from the center of its track, as its right of way, as a matter of law, was reversible error, since the right of way depends upon the charter of the particular road and upon the condemnation proceedings. (*Post, pp.* 80, 81.)

Cases cited and approved: Railroad Co. v. Cachrane, 71 Tenn., 478; Railroad Co. v. Telford, 89 Tenn., 293; White v. Railroad, 101 Tenn., 95.

2. **LANDORD AND TENANT. Unlawful detainer. Evidence. Admissibility.**

In a suit of unlawful detainer, where defendant claimed to have gone into possession of land lying beside a railroad's tracks under one who had received possession from the railroad, it being alleged that the land in controversy was a part of the railroad's right of way, but defendant was induced to take a lease from the plaintiffs under representations that the plaintiffs had title to the land, evidence of the delivery of possession to defendant by the railroad's lessee was admissible, since where one in possession under a lease without having surrendered the possession takes a lease from or attorns to a third party under a mistake, he is not estopped to deny the title of such third party. (*Post, pp.* 81-83.)

Cases cited and approved: Shultz v. Elliott, 30 Tenn., 183; Hammons v. McClure, 85 Tenn., 67; Washington v. Conrad, 21 Tenn., 561; Philips v. Sampson, 39 Tenn., 430; Doak v. Donelson, 10 Tenn., 249; Allison v. Casey, 63 Tenn., 587; Beaty v. Jones, 41 Tenn., 482; McGhee v. Grady, 80 Tenn., 89.

3. **LANDLORD AND TENANT.** Unlawful detainer. Evidence. Admissibility. Title.

While in general no title papers can be introduced in an action of unlawful detainer except to show boundaries, they may be further introduced for the purpose of showing title, where a tenant has been induced to attorn to a third party, through fraud or mistake. (*Post, pp.* 81-83.)

FROM ROANE.

Appeal from the Circuit Court of Roane County.— S. C. BROWN, Judge.

J. W. STONE, for appellants.

WRIGHT & HAGGARD, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a suit of unlawful detainer, brought by plaintiffs against Zwicker, as their tenant, who had refused to surrender possession at the end of the term. The defense was that Zwicker went into possession under one Goldston, who had received possession from the Tennessee Central Railroad Company. It was claimed that the piece of land in controversy, one hundred feet square, lying alongside the track of the railroad company, was a part of the latter's right of way. There was evidence tending to show that the railroad company's right of way extended fifty

feet only from the center of the track. · There was no evidence that it extended one hundred feet, but the trial judge charged the jury that this was true as matter of law.   The evidence indicated that after Goldston went into possession of the fifty feet, and was clearing the ground for a coalyard, the plaintiffs claimed that they owned the ground he was occupying, and also a much larger area.   The result was that he took a lease from plaintiffs, not only for the fifty feet he had received from the railroad company, but for fifty additional feet; that is for a parcel of land one hundred feet square, the land now in controversy, this piece consisting of one hundred feet square, lying immediately alongside the track.   After Goldston had thus taken the lease from the plaintiffs he sold this lease, and also the right he had acquired from the railroad company, to Harmon & Zwicker, and placed them in possession of the land. After this, Zwicker bought out the interest of his partner, Harmon, and subsequently accepted a lease of the whole one hundred feet from the plaintiffs. At the expiration of this lease he refused to deliver possession; hence this suit.   The suit was instituted before a justice of the peace, and, from a judgment by the latter, the controversy, by proper proceedings, was transferred to the circuit court of Roane county, and in the latter court a judgment was rendered against the plaintiffs, and they appealed to the court of civil appeals.   Numerous errors were assigned in that court, as also in this court.   The court of civil

appeals considered only one question, that arising on a point of evidence.

We do not differ with the court of civil appeals as to their decision upon the point of evidence, but their judgment is erroneous because they, in effect, approved the charge of the trial judge that the railroad company was entitled to one hundred feet on each side from the center of the track as its right of way, as matter of law. This action of the court of civil appeals is assigned as ground of error in this court.

There is no law to the effect that a railroad company is entitled to one hundred feet as right of way. The matter depends, in the first place, upon the charter of the particular road, and, in the second place, upon the condemnation proceedings. The charters usually provide, either that the right of way shall extend so many feet from the center of the track on each side, or not in excess of some particular amount. In the latter case the exact extent of the right of way must be fixed by the judgment in the condemnation proceedings. In case the railroad takes possession under its charter without condemnation proceedings, it will hold to the extent of the limits fixed by the charter, where that is definite, if it is permitted to retain possession without question for the statutory period. These principles are sufficiently stated and illustrated in *Railroad Co.* v. *Cochrane,* 71 Tenn. (3 Lea), 478; *Railroad Co.* v. *Telford,* 89 Tenn., (5 Pickle), 293, 14 S. W., 776. It may be that the

mistake of the trial judge and the court of civil appeals arose out of some language used in *White* v. *Railroad,* 101 Tenn. (17 Pickle), 95, 45 S. W., 1073, where it is said that a domestic railroad corporation "may have condemned and appropriated as an easement a right of way 'not exceeding two hundred' feet in width, over any person's land through which its lines of road may be located." The references to the Code show, however, that the court was speaking from the general charter authorized for railroad companies. In the case before us it does not appear whether the Tennessee Central Railroad Company had the general charter, nor indeed what kind of charter, nor is there any evidence whatever that its right of way exceeded fifty feet. The effect of the charge of the trial judge that the railroad company was entitled to one hundred feet was to deprive the complainants, not only of the fifty feet as to which there was evidence, but fifty additional feet as to which there was no evidence in favor of the defendant, as claimant under the railroad company. For this error the judgment must be reversed.

We deem it proper, however, to state our views upon the question of evidence for guidance in the next trial. Goldston having been placed in possession of the fifty feet next the track, by the railroad company, and Harmon and Zwicker having received that possession from him, if the latter were subsequently induced to take a lease from the plaintiffs under a representation that plaintiffs had title to the whole one

hundred feet, they could properly defend as to so
much of the land as Goldston had received from the
railroad, and in possession of which they were placed
by Goldston, and for this purpose they would have a
right to introduce evidence as to the fact of posses-
sion having been so delivered, and also to show the
title of the railroad company. If the railroad com-
pany really owned the land, and had placed Goldston
in possession of it as its tenant, and he had placed
Harmon and Zwicker in possession of the same land,
and Zwicker had bought out his partner, Harmon, and
remained in possession, the attornment to the plain-
tiffs by Goldston after he had received possession
from the Railroad Company, and the attornment by
Harmon and Zwicker after they had received posses-
sion from Goldston of the railroad land, would not
prevent Harmon and Zwicker, or Zwicker as pur-
chaser of Harmon's interest, from proving the facts
as stated, even though he (Zwicker) subsequently took
a lease for the whole one hundred feet from the plain-
tiffs. If A. lease land to B., and place him in pos-
session of it, and B. subsequently, without having
surrendered the possession to A., take a lease from a
third party, or attorns to the latter under a mistake
on his part, or through fraud of such third party, as,
for example, under the belief that that party has
title as represented by him when he, in fact has not
the title, then B. is not estopped to deny the title of
such third party from whom he has received such
second lease, or to whom he has attorned, but may

Smith v. Zwicker.

show that he was placed in possession by A., and even that A. has the title to the land. It is true that in general no title papers can be introduced in an action of unlawful detainer, except to show boundaries, but they may be further introduced for the purpose of showing the title where a tenant has been induced to attorn to a third party, through fraud or mistake. These principles will be found amply discussed in the following cases: *Shultz* v. *Elliott,* 11 Humph. (30 Tenn.), 183, 186; *Hammons* v. *McClure,* 1 Pickle (85 Tenn.), 67, 2 S. W., 37; *Washington* v. *Conrad,* 2 Humph. (21 Tenn.), 561; *Philips* v. *Sampson,* 2 Head (39 Tenn.), 430; and see *Doak* v. *Donelson,* 2 Yerg. (10 Tenn.), 249, 253, 24 Am. Dec., 485. As to fraudulent representation concerning his title by a third party, in order to induce an attornment, and as to an introduction of the title papers of the party under whom the tenant originally went into possession, see *Allison* v. *Casey,* 4 Baxt. (63 Tenn.), 587; *Beaty* v. *Jones,* 1 Cold. (41 Tenn.), 482; and *McGhee* v. *Grady,* 12 Lea (80 Tenn.), 89, 94-96.

Let the judgment be reversed, and a new trial awarded.