## Dickel *v.* Bucks-Falls Electric Co., Appellant.

Argued January 12, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

506

*Frank M. Hunter,* of *Hannum, Hunter, Hannum &
Hodge,* with him *Howard I. James, Camden H. McVey*
and *Robert B. Greer,* for appellant.—The trial court
erred and the jury was misled by plaintiff as to the pur-
pose for which the right-of-way was appropriated and
could be employed.

Where land is condemned by an electric company pur-
suant to Act of 1921, P. L. 1057, as a right-of-way for a
transmission line, it is error to instruct the jury to dis-
regard the possibility of a reversion and to award dam-
ages on the basis of a permanent and absolute taking:
Sholl v. Stump, 24 Pa. Superior Ct. 48; Scholl v. Em-
erich, 36 Pa. Superior Ct. 404; Wilson v. Scranton, 141
Pa. 621; Pitts. & Lake Erie R. R. v. Bruce, 102 Pa. 23;
Lazarus v. Morris, 212 Pa. 128; Larkin v. Scranton, 162
Pa. 289; Robinson v. Mfg. Co., 282 Pa. 539; West Side
Electric Ry. v. Power Co., 8 Pa. D. & C. 281; Scouton v.
Electric Co., 84 Pa. Superior Ct. 458.

*Clarence J. Buckman,* with him *Bunting & Satter-
thwaite,* for appellee.—No error was committed as to the
purpose for which the right of way was appropriated
and could be employed: Fayette County Commissioner's
Petition, 289 Pa. 200; Schmidt v. Allegheny Co., 303 Pa.
560; Biddle v. Water Works Co., 190 Pa. 94.

The possibility of abandonment or of reverter had no
bearing on the question of damages in this case.

OPINION BY MR. JUSTICE DREW, March 14, 1932:

The facts in this case arise out of an appeal from the
award of viewers.

Bucks-Falls Electric Company, appellant here, is a public service company, authorized to supply light, heat and power by means of electricity in a portion of Falls Township, Bucks County, where the land of Henry C. Dickel, Jr., the appellee, is situate. In June of 1926, the electric company filed its petition with the public service commission of this Commonwealth for a certificate of public convenience evidencing the commission's approval of the electric company's exercise of the power of eminent domain with relation to Dickel's property. After a hearing, the commission, on October 11, 1926, issued its report and order and certificate of public convenience, certifying that it appeared from the evidence that the construction, operation and maintenance of the transmission line or lines described and referred to in the electric company's petition is for the purpose of supplying light, heat and power by means of electricity to the public of Falls Township, and found and determined "that the service to be furnished by said Bucks-Falls Electric Company through its exercise of the power of eminent domain in acquiring *a right-of-way* for the construction, erection, operation and maintenance of said transmission line or lines as set forth in said petition and in the evidence taken in this proceeding, is necessary or proper for the service, accommodation and convenience of the public." It ordered that the commission's certificate of public convenience issue as above determined, and, on the same day, the commission's certificate issued.

Since the formal pleadings in the case do not present the issues, we are compelled to quote at length from the record to get the material facts involved. The report and order and the certificate were captioned as follows: "In the Matter of the Application of Bucks-Falls Electric Company......for the approval of the exercise of the right of eminent domain in acquiring right-of-way for the construction, operation and maintenance of a transmission line over and across the land of Henry C.

Dickel, Jr., in Falls Township, etc." The application, in paragraph 3, alleged the electric company's desire to construct a line for the transmission of electricity, which line was designated by describing the center line thereof, together with the statement that said transmission line is necessary for supplying light, heat, and power to the public of Falls Township. Paragraph 4 of the application recites that the route of the transmission line crosses two strips of land, designated as Exhibit A, and then states that the petitioning company desires to appropriate the two tracts or strips of land, as being necessary for the company's corporate use in the construction, erection, operation or maintenance of its buildings, machines, apparatus, plants, works, equipment and facilities for the transmission and distribution of electric light, heat and power or any of them, and particularly for the proposed transmission line, so that it shall be entitled to all of the right by virtue of said appropriation which it may be entitled to take, use and enjoy under the Act of May 21, 1921, P. L. 1057, and the act of assembly to which it is a supplement, etc. Paragraph 6 recites the effort to purchase the right-of-way for the proposed transmission line over the tracts or strips of land described in Exhibit A; paragraph 7 states that the service to be furnished by means of the transmission line is necessary for the service, accommodation and convenience and safety of the public, and the prayer of the petition is that the commission find and determine that the service to be furnished by the petitioner through the exercise of the power of eminent domain by the appropriation aforesaid is necessary or proper for the service, accommodation, convenience and safety of the public and that it issue a certificate of public convenience in evidence thereof.

On October 20, 1926, the electric company filed its bond to protect the landowner against damages to which he might be entitled, according to law, because of the proposed appropriation. Though not technically in evi-

dence, it is copied in the record and we refer to it. The bond recited that the electric company was enabled by the certificate of public convenience of the public service commission dated October 11, 1926, to enter upon, use, occupy, take and appropriate the two tracts or strips of land situate in Falls Township referred to in Exhibit A, that the electric company shall be entitled to all of the rights which the Act of May 21, 1921, P. L. 1057, gives it, including, but without limitation upon the generality of the foregoing, the right from time to time to construct, erect, operate and maintain upon the tracts or strips of land such facilities as in the judgment of the company may be necessary or appropriate for the purpose of transmission of electric light, heat and power, etc., and further recited that the electric company by proper corporate resolution declared the said property to be necessary for the corporate use of the company for generating electric light, heat and power and particularly for the transmission and distribution thereof and for the construction, erection, operation and maintenance of a transmission line or lines for these purposes; it then recited that the location and route of such line or lines and the right-of-way over which the same is proposed to be constructed and maintained had been duly approved and adopted by the board of directors of the electric company.

Viewers were appointed in July of 1927, and they assessed damages of $950. In December of 1927, an appeal from the report of the viewers was filed, and on October 6, 1930, a decree issued directing that an issue be raised by a declaration for money had and received, and a plea of non assumpsit thereto. A declaration was filed for money had and received, to which the defendant company pleaded non assumpsit, and on the feigned issue thus raised the case was tried in January of 1931. The jury did not view the premises, and after deliberations, brought in a verdict for the plaintiff and against the defendant in the sum of $22,590 and costs. A motion for

a new trial was argued and overruled; exceptions were allowed, and judgment having been entered on the verdict, defendant appealed.

The plaintiff introduced the record of the proceedings before the public service commission as part of his case, and we have examined those proceedings to determine their effect on the issues here involved.

While it is true that the electric company in one part of its petition to the commission used the general language of the Act of May 21, 1921, P. L. 1057, giving to electric companies certain additional rights of eminent domain, we believe that the true reading of the entire petition and of the report and order and certificate of public convenience of the commission shows that the electric company sought to condemn a right-of-way for the construction, erection, operation or maintenance of a transmission line over the strips or tracts of land belonging to the appellee. It was the transmission line that was declared necessary for supplying light, heat, and power to the public in the petition. The right-of-way for the line was frequently referred to as the thing desired. And the public service commission approved of the electric company's exercising the right of eminent domain for that transmission line purpose and none other. Legally, therefore, the electric company did not and could not, without the commission's further approval, appropriate more of appellee's property, and it follows from this that the damages to which the appellee is entitled are damages resulting from the appropriation of the described right-of-way across his land for the transmission line.

In view of this fact it was unfortunate that the trial court allowed the case to be tried on the theory of a virtually absolute appropriation by the electric company of the strip of land to the entire exclusion of the landowner.

The question of the commission's function under the 1921 Act in this proceeding has not been specifically de-

termined by this court, but the act has been under review in our courts. The Superior Court said in Reiber v. Pub. Ser. Com., 83 Pa. Superior Ct. 507, that "The granting of the certificate determines neither the validity nor the scope of subsequent proceedings by eminent domain; it evidences only the preliminary approval by the regulatory body to whom general regulation of the service of such companies was entrusted as specified in the statute." In Dickson v. Pub. Ser. Com., 89 Pa. Superior Ct. 126, at 136, the court said: "The power of eminent domain cannot be exercised until the property to be taken has been specifically defined and its selection approved and the taking authorized by proper corporate action." In Wilson v. Pub. Ser. Com., 89 Pa. Superior Ct. 352, at 359, the court, commenting on the 1921 Act said: "Again,......the commission in determining the questions committed to its jurisdiction in an application of this kind must necessarily have power to pass upon the question of the proper location of the line, especially if an electric company should act wantonly, arbitrarily, or unreasonably in selecting a route." It would seem, therefore, that the certificate of the commission, properly construed, fixed or defined the property to be taken, and to this extent the language of the commission's certificate of approval restricted the general language of the electric company's petition. Only such property may be appropriated as the public service commission determines is necessary for public use.

As we view the case, therefore, it is not necessary to pass on all of the assignments; we shall pass on two, the sixth and the eleventh, both of which we sustain.

The sixth assignment is sustained, because the court instructed the jury that the defendant company took and now has title to the 75-foot strip, that the company took permanent title to that land, and that the jury should not consider the possibility of reversion to the landowner. We feel that the court misstated the law in this regard to the prejudice of the defendant company. First,

the extent of the taking was misconceived, and second, it is clearly settled in this State that property taken by appropriation under circumstances like the ones here does revert to the owner if the appropriating company ceases to use it for corporate purposes. In Lazarus v. Morris, 212 Pa. 128, at 131, the court said, "The grantee takes what the act gives, and no more. If the act gives an absolute estate, and compensation is provided on this basis, the whole title may be acquired. If it only gives the right to use and occupy, the grantee only takes a conditional fee or easement, terminable on the abandonment of the use for which the land was appropriated. The appropriation of land under the power of eminent domain does not give a fee simple estate therein in the absence of express statutory language to that effect, but only a right to use and occupy the land for the purpose for which it is taken: Pittsburgh, etc., R. R. Co. v. Bruce, 102 Pa. 23; Lance's App., 55 Pa. 16; Pennsylvania Schuylkill Valley R. R. Co. v. Paper Mills, 149 Pa. 18." True, the future may prove that the land was taken permanently, but the court should not now exclude the possibility of a future reversion. In the case of Larkin v. Scranton City, 162 Pa. 289, the lower court instructed the jury as follows: "That strip of land, containing 900 feet, is taken absolutely from Mr. Larkin; the title to it is taken from him, and vested in the City of Scranton by virtue of this proceeding for all time." On appeal, judgment for plaintiff was reversed and this court said, "The statement in the charge that 'the strip of land is taken absolutely from Mr. Larkin; the title to it is taken from him and vested in the City of Scranton by virtue of this proceeding for all time,' was probably inadvertent, but it was unfortunate, for, although it may not have substantially affected the amount of damages, yet we cannot say that it did not do so. It bore directly on that subject, and was clear technical error: Wilson v. Scranton, 141 Pa. 621." The rule there announced applies here.

The eleventh assignment is also sustained. Viewed in the light of the theory on which the case was tried and particularly in the light of the stress which was laid on some of the language of the fifth section of paragraph 4 of the petition to the commission, the court's charge that the appellant company condemned and took for the purposes of its business a 75-foot strip of land across Dickel's farm was error, for by this instruction the court told the jury that a 75-foot easement or right-of-way for a transmission line was an absolute taking of the 75-foot strip for any and all purposes for which the company might desire to use it. As we have already stated, a reading of the record seems to us to negative this conclusion, and the jury therefore was no doubt led into error by this part of the charge. We are not unmindful of the fact that the court and counsel for plaintiff were led into the above mistaken belief by some of the language of the electric company's petition, and so, perhaps, was the jury.

Since the case must be retried, we suggest that in some way, the issues be more sharply and exactly drawn than they are under the present pleadings. If this is done, and if a proper, legal and formal disclaimer is filed by the appellant as was done in Philadelphia Felt Co.'s App., 293 Pa. 551, the case may be more satisfactorily tried.

The judgment is reversed and a venire facias de novo awarded.